I think it's important to note at the outset that if the court determines that the summary judgment determination was inappropriate, or that R&L should have been entitled to additional time and discovery to ask questions regarding these unanswered questions, that the court should vacate the award, the exceptional case finding, since PITT Ohio would not in that I'll start first with the determination of litigation misconduct and point out at the start that all of the misconduct that the court relied upon was contained within the briefs. Therefore, this court is, for all intents and purposes, exactly situated as the trial court was in making a determination of litigation misconduct because there was no oral argument, no hearing, no personal What's the standard of review? With respect to litigation conduct, it is, there's definitely, I'm sorry, it jumped out of my head, Your Honor, but there's certainly deference to the trial court. It is not an over review. It's deference to the trial court It's abuse of discretion, isn't it? Correct, Your Honor. I apologize. It's abuse of discretion, and certainly, this court must give deference to the trial court's determination in that regard. But certainly, when we're saying contained within the briefs and no personal appearances of counsel, you're talking about situations that you can see on paper yourself. When you're saying no personal appearances, I mean, there was not a specific hearing on the motion for attorney's fees, but it's not like the judge wasn't there throughout the entire course of the trial and that you didn't have multiple opportunities to interact with the judge, is that right? Very true. Very correct. But none of the instances that the court cited as litigation misconduct occurred in any of those instances. The only litigation misconduct that the trial court cited was contained in the briefs. So, seemingly, there would be no assertion of litigation misconduct in any proceedings other than what was contained in the brief, which this court can read for itself and make a determination just as the trial court did. I mean, I guess the reason I take issue kind of with this, your statement suggests that there's some sort of de novo review, and as you've acknowledged appropriately, it's not. I do not mean to suggest there's a de novo review, your honor. I mean to suggest there's an abuse of discretion standard, but that, practically speaking, this court sits exactly as the trial court did, with no less information than the trial court had when it made this determination. How many hours do you think the trial court put into this proceeding from beginning to end? Quite a number of hours. I could not begin to spec, because I know a lot of work is done behind the scenes by the trial court, to begin to suggest how much time the trial court put in behind the scenes. Certainly, we had several hearings in which we took up the court's valuable time, and those hearings were, some of those were extensive. But again, your honor, I would note that none of, no situation did the trial court suggest that any of those hearings, any litigation misconduct took place. The first instance that the court suggested that litigation misconduct was when R&L, it suggested that R&L took the position in its brief that a hearing was required as a matter of law to satisfy due process. In a footnote in a brief, R&L stated that we took the position that a hearing was necessary. The trial court cited those cases, and we cited those cases, and the cases say that discovery in a situation where you have a determination of a Section 285 exceptional case prior to a trial on summary judgment, that one should proceed, the court should proceed to allow discovery in a hearing because the facts have not been developed. We never asserted that due process required a hearing. We simply asserted that the correct procedural way to proceed, and cited cases supporting that, would be to have a hearing and conduct a hearing. The trial court relied on In Re, this court's decision, In Re, Perry to conclude that that was a mischaracterization of the law and that In Re, Perry did not establish that due process was required in that situation. That In Re, Perry we respectfully submit was not relevant to these proceedings given its procedural stance, which differed greatly from the procedural stance before the trial court, and therefore we do not believe that was litigation as conduct. Let me jump for a second to the question of objectively baseless and subjective fact-based, Your Honor. I believe that this court's previous decision in which it determined that R&L had a sufficient basis to assert, based upon Form 18, that Pitt, Ohio was a direct infringer in the PeopleNet indirect infringement litigation, answers the question of whether or not... Well, really what we said was that the allegations that were made were sufficient to survive a motion to dismiss. We didn't pass judgment on whether or not a person who had committed pre-filing investigations was sufficient to support those allegations. That's true. I would suggest, Your Honor, and I've seen holdings from this court, or at least statements from this court, that it would be the unusual case indeed that a complaint adequately stated a claim for direct infringement, but there was an inadequate pre-suit investigation. And I would submit that that is a correct, logical statement. That if the allegations that we presented to this court regarding Pitt, Ohio were sufficient to state a direct infringement claim as to Pitt, Ohio, sufficient to go forward against PeopleNet for indirect infringement, therefore our pre-suit investigation with respect to Pitt, Ohio, certainly was not grossly negligent, as is required by Section 285. What do we do with the fact that there are some apparent inconsistent statements in our case law where we have some cases that say whether or not you conduct a pre-suit investigation is relevant overall to the 285 analysis, and then other cases that say, no, we don't look to pre-suit investigation in the absence of an actual motion under Rule 11? There certainly is that dichotomy in this circuit's case law. I believe that in the absence of a Rule 11 motion based on pre-suit investigation that we should leave the question of pre-suit investigation alone in the Section 285 analysis unless we find that there is a grossly negligent attempt. I think you can marry the two, Your Honor, but I think right now you've got two different arms of cases out there that seem to be opposing each other, and I think there's a logical way to marry the two to suggest that, yes, you can have Section 285 liability for grossly negligent pre-suit investigation. That's not what you argued to the District Court, right? I mean, one of the things the District Court called out was the fact that you argued that the adequacy of pre-suit investigation is irrelevant to the exception of pre-suit investigation. That was one of the things that the District Court relied on, and you're not disputing that that's the case. So before the District Court you were arguing that it was completely irrelevant. No, we did not argue that it was completely irrelevant. We asserted in a footnote that Pitt, Ohio's suggestion that our pre-suit investigation was inadequate. Given that argument that our pre-suit investigation has that characterization of our pre-suit investigation, it would be irrelevant. We argued vigorously in the trial court that our pre-suit investigation was not grossly negligent. There are pages in our brief that are... I wasn't suggesting that. I'm talking about whether or not you were arguing that the cases show that a pre-suit investigation is indeed relevant. I mean, here you acknowledge and agreed with Judge O'Malley that there is some dispute in the cases, but the District Court at least stated that below, before her, you were arguing that it, under the case law, is irrelevant. Well, with all due respect to the District Court, I believe that that was an expansive reading of our footnote. The intent of the footnote, because in the body of the brief we argued for pages about how our pre-suit investigation was not grossly negligent. So clearly we acknowledge the relevance of the pre-suit investigation when we argue that it was not grossly negligent. The point of the footnote was, Pitt, Ohio had suggested that because that our pre-suit investigation was inadequate. We said, well, the question of whether... and that inadequate is not the standard under Section 285. Grossly negligent is the standard under Section 285. Inadequate is something less than grossly negligent. We asserted, therefore, that the suggestion that our pre-suit investigation was inadequate is irrelevant because it is irrelevant to the question of whether that pre-suit investigation is grossly negligent. Now, could we have worded that footnote a little bit better? Probably. But certainly in the face of all of the arguments we made acknowledging that our pre-suit investigation was relevant in a Section 285 grossly negligent determination, clear and convincing evidence of litigation in this conduct, I would suggest that footnote does not exhibit. Also, I think the Court has recognized that there is some dichotomy in the Court's case law about when you don't have a Rule 11 motion filed, and certainly Pitt, Ohio did not file a Rule 11 motion. The question exists as to whether or not a pre-suit investigation can be the basis of a Section 285 exceptional case determination. And that exists in the case law. We cited cases that came to that trial court that came to the conclusion that absent a Rule 11 motion, you can't proceed under Section 285 based on a pre-suit investigation. So if you apply that arm of the case law, then that footnote appears to be reasonable in its argument to the trial court. But back to the determination of reasonable, objectively baseless, I again submit, Your Honor, that a determination by this Court in the PeopleNet case that we had sufficient facts to proceed against PeopleNet for indirect infringement, which necessarily required that we identify a direct infringer, Pitt, Ohio, which we did, precludes any conclusion logically that our pre-suit investigation was inadequate. Because an inadequate pre-suit, a pre-suit investigation that produces sufficient evidence that allows a party to file a valid claim seemingly cannot in that instance be inadequate. And so, or certainly not grossly negligent as required by Section 285. The further, in fact, I see my, I've reserved five minutes for my rebuttal. I'll stop. Yes, so let's take your rebuttal time and let's hear from Ms. Jankowski. Thank you, Your Honor. I want to first address litigation misconduct specifically. In this case, the Court looked at numerous aspects of R&L's conduct from start to finish in reaching the conclusion that there was litigation misconduct. Or if the way you look at the law is articulated broader than that, certainly frivolous litigation, vexatious litigation, prolonged litigation. And I believe that the Court didn't just focus in concluding that there was litigation misconduct only on the misciting of the Court's opinion and the misciting of case law. One of the other things that Judge Beckwith said was in opposing the motion for summary judgment, you came before the Court, R&L, with inadmissible evidence and irrelevant evidence. And in opposing a motion for summary judgment, you're not supposed to come forward with hearsay, evidence that you know is hearsay. The white paper that we've talked about already, I want to remind the Court, it is hearsay as to Pitt, Ohio. Pitt, Ohio did not prepare that document. And interestingly, Pitt, Ohio was never asked to confirm or deny any of the statements in that document. You know, ahead of time, really, or at any point in time, if a Pitt, Ohio, I mean, excuse me, a PeopleNet advertising piece was not a Pitt, Ohio advertising piece. What is your response to Mr. White's argument with respect to the tension, if any, between our previous opinion and this case with regard to the investigation and the direct infringement of Pitt, Ohio in the earlier case? Okay. With respect to that issue, I would like to say a couple of things. You were considering complaints that were not my complaint, was not the Pitt, Ohio complaint you were bearing judgment on. You were looking at PeopleNet's complaint to determine whether or not they had stated a claim. And interestingly, if you look back at what you wrote and what the facts were that you discussed, in concluding that there were reasonable inferences and that R&L was certainly allowed to proceed beyond the motion to dismiss phase, you discussed the white paper in one sentence. There were other statements that PeopleNet had made that they alleged with respect to scanning, with respect to Berry and Smith, and there is a whole paragraph in your opinion that talks about the specific statements in the PeopleNet complaint. So I would suggest that, number one, you'd never discussed the white paper, certainly in the context of our client, Pitt, Ohio. And I don't believe you were looking at the white paper in the four corners to determine whether or not it was reasonable to infer that Pitt, Ohio was doing anything to infringe the 078 patent. With respect to pre-suit investigation, the cases and the basis for us relying on it and citing it to the district court was really two-fold. It wasn't one-fold. Yes, it bears on the extent to which frivolous litigation was commenced, but it also bears on the prong of proving somebody's subjective bad faith. But it is correct, though, isn't it, that the trial court essentially applied a Rule 11 standard in assessing the quality of the pre-suit investigation. Isn't that right? I don't believe that's what the court did. She cited it to Rule 11 when she discussed it. She cited it to Rule 11 for the purpose of the case. But if you look at the standards that Judge Beckwith applied, she's very clearly applying the clear and convincing standard, and she certainly didn't shift the burden at any point in time to the burden beyond us. It was our burden to come forward and show objective baselessness, subjective bad faith, as well as any other basis we wanted to come forward to prove exceptional. But our case law is clear, though. I mean, we do have pretty firm statements in the case law that says when there's no Rule 11 motion, we can't use a Rule 11 standard for pre-suit investigation to displace the high bar that you have to meet in a 285 context. I agree that the Rule 11 standard is not a standard that should have been used. I don't believe it was used here. The fact that there are discussions about the lack, in my opinion, the gross negligent lack of pre-suit investigation, and the fact that she's referencing a Rule 11 case to compare conduct, does not mean that, one, she applied that standard at all, because I think if you look at the way she articulates the standard and talks about it in the context of the actual facts, I believe she did apply the correct standard. And certainly she said there is clear and convincing evidence. She said that more than once. She also addressed the correct standard of objective baselessness, subjective bad faith, and then found, in addition to that existence, also the existence of litigation misconduct. So the reality is, for her to have concluded it was an exceptional case, she didn't need both prongs. She could have applied either test. And under either test, exceptionality was met in this particular case. So while there is a reference to a case that talks about Rule 11, there are certainly a slew of other cases that she cites that demonstrate she knew what the standards were and she applied them and held off to the burden of clear and convincing and didn't shift the burden the way it would normally work in a Rule 11. And I believe that's the reference and use of the pre-suit investigation discussion, because if you look at some of the cases that talk about it outside of a Rule 11, they do it within the context of, is the claim objectively reasonable or baseless, and was there subjective bad faith? That's certainly one of the primary reasons we talked about it and said, look at what did not happen here, because I do think you need to consider that in order to be able to make a determination as to whether or not a claim is objectively unreasonable, because as we know, that standard is backward looking. You look back in time as to everything that happened in that case. In terms of backward looking, I was a little taken aback by the fact that the district judge said, well, what they should have done is basically be sleuth in the night and go and find rest stops where the trucks are parked and sneak in and look inside the cabs to see what they can find. That seems like a bit much to ask for a pre-suit investigation, doesn't it? Not to me. In patent infringement cases, with as expensive as they are, with the fact that you can, quite frankly, get nailed if you don't do it right, no. Most people hire private investigators or ask their drivers, in this case, hey, you're going to see these trucks. See if there are any scanners in there. No, I don't think that's unreasonable at all. I think that's what should have happened. And at a minimum, there should have been some contact with our client like there were with some of the other clients. PeopleNet certainly was on notice that they were going to get sued. We weren't. The reason we weren't is, and we've presented this, is because there was a motion to dismiss that they needed to deal with. And that's the reason we got sued. And that's the reason nobody looked in cabs. That's the reason we didn't get a cease and desist letter or an opportunity to explain to them. And normally when your client gets sued, you respond. We attempted out of the box to deal with that issue through a phone call to say, I think you made a mistake. Our client is not doing this. But what's the response to the argument that those documents that you just overlooked, the first time you had to produce documents, were the documents that actually showed you were using live cargo in testing, which was different than what you swore to after being initially sued? Okay. Well, with respect to the actual... But it's kind of hard for someone to say, oh, they're telling me they're not doing anything wrong. And then they receive documents eight months later, despite an earlier document production that shows that you didn't do it the way you said you did. Well, first of all, some of the documents that were used in the test were, in fact, part of the feasibility study. Now, the specific XLM documents, that's what we're talking about here. Is it true that that was the first time that they were aware that you were using live cargo? I don't... It shouldn't have been. No. Didn't you deny before that, that you used live cargo? No. We didn't deny it. If you look at the affidavits, it's not in there at all. They never asked us, were you using active cargo on this particular day and we deleted it out? No. We certainly didn't say there was a driver and a scanner and we circled the parking lot. I don't even know where that argument's coming from. You denied infringement. Pardon me? You denied infringement. We absolutely denied infringement. We denied that as early as the response to the complaint. Yes, we denied that very clearly. And every affidavit that was submitted denied, yes, infringement, denied that we were not using scanners, and made very clear we never created a loading manifest. But the affidavits don't specifically say active cargo or non-active cargo. They just don't address it at all. No, they don't. I do want to address the issue of this exaggeration or mischaracterization of the record. I've already talked to you about my view on the interpretation that has been presented here by R&L on what you held, because that was something I definitely wanted to address. It was raised on page 13 of their reply brief, and I just believe it's wrong. The other issue that I want to address is that there are statements in this reply brief that they never knew that we were not using scanners across our fleet, that the first declaration didn't address that, and the second declaration did not address that. When I saw that in the brief, I was completely taken aback, because the first declaration that they gave us, and that we adopted verbatim, very clearly said that Pitt, Ohio did not know, does not, and has not generated loaning manifests and doesn't use scanners. So those are two instances in the reply brief before this Court where I think R&L has, again, exaggerated the record, misstated the record. In terms of objective baselessness and subjective bad faith, that standard, as the Court is aware, is backward looking. I believe that at every turn from the moment that complaint was filed and filed to allege that we were infringing the 078 patent because we were using scanners across our fleet, I believe that the time that was filed, it was objectively baseless. And I believe that this litigation... But they had been told... Pardon me? They had been told, admittedly by a third party, that you were using the scanners. So you're saying, what, that that was on its face incredible? I think that that statement, if you look at the statement in the context of what that statement was made, a hearsay statement, do I believe it is objectively unreasonable to rely on that and file this case when it's filed on information and belief on the salient elements? Yes, I do. I also believe that there is absolutely no authority for the position that you can properly plead a case and that it doesn't mean it's objectively unreasonable. Because if that were the case, there would be a lot of cases. Because as we all know, when you file that complaint, you are entitled to have your allegations accepted as true, regardless of whether they are, of course, accepted as true. So yes, the fact that you can properly plead a case has absolutely no bearing after the fact when you're looking back as to whether or not something is objectively unreasonable. And the only two pieces of facts, if you will, that they rely on in their complaint is a hearsay document that our client didn't author, and a hearsay statement that our client wasn't privy to and did not make. It would be a different case if the statement that was alleged in the complaint was something our client had said. But there is nothing in that complaint, even on information and belief, that in any way is directly linked to our client. It's not as if they said, here's the website, here's what Penn, Ohio says. Nothing like that. So yes, I believe at inception, the case was objectively baseless. And I believe it continued to be objectively baseless, and it was obviously our client's hope that we wouldn't have had to file a motion for summary judgment. Okay. Thank you, Ms. Kaczmarowski. Thank you. Mr. White. Thank you, Your Honor. On that last point, at the time that Pitt, Ohio filed its motion for summary judgment, it had in its possession a third declaration that R&L had submitted to it for consideration. So Pitt, Ohio chose not to execute the declaration. It chose to file its motion for summary judgment. Mr. White, tell me where in the record Pitt, Ohio told you that they did not use live cargo and that they drove around the parking lot during the testing. On top of my head, Your Honor, I'm not going to be able to tell you specifically where that is in the record. I believe that that is in the record, certainly. Well, that's a big point. And you stood up here and told us that that's what they said. But I haven't seen it in the record. So where is it? You don't have any idea where it is? Not off the top of my head, Your Honor. I apologize. I'd be happy to look for it, and if the court would require a supplemental briefing on that point, we would look for that. One question, and we would welcome if you could provide that information. Check it with the other side. Certainly, Your Honor. Just the citation to the record. We don't need any more argument. Understood. On the point of the question of searching for – on the question of the declarations, the fact that the declarations do not address the fact that this was live cargo. That seems to – it seems to suggest that the declaration – it seems to characterize the declaration process that we're going through with Pitt, Ohio, trying to make a determination of whether – what exactly Pitt, Ohio's conduct was. That seems to be an important fact. And that when we were trying to gather information from Pitt, Ohio through the declaration process, the fact that they would omit that this was active cargo and not provide that information to us, colors for this court, I think, exactly what that process was like when R&L was trying to find a way to resolve this case with Pitt, Ohio by obtaining declarations. Key, important information regarding what Pitt, Ohio did during this testing process was not provided to R&L, despite R&L's request numerous times to get that information from Pitt, Ohio. We didn't learn until after summary judgment briefing is closed that this was, in fact, active cargo. If you really thought that they were using this scanning equipment across their fleets and thus aggressively and consistently infringing, why didn't you send them a cease and desist letter? Your Honor, I don't – I'm not sure – it's been three years ago. I'm not sure that I can accurately speak to our deliberations at the time. We felt that we had sufficient facts to proceed against Pitt, Ohio on the basis that they were directly infringing the patent from the statements that we got from a third party with knowledge, with apparent knowledge from the white paper. And by the way, talking about the white paper, Pitt, Ohio was extensively quoted in the white paper. You know, isn't it reasonable to infer that Pitt, Ohio extensively quoted in the document that talks about its capabilities – its existing technology capabilities to generate a loading manifest before the truck arrives? But never once quoted about generating a loading manifest through scanning. No, but quoted in the article that talked about its existing technology infrastructure, the same infrastructure that it plugged in-cab scanning into. You know, again, we can – People meant computer system to generate loading manifest or strip sheets. Correct, before the truck arrived at the terminal. That's what the white paper said. And so – but what happened is Pitt, Ohio, through its in-cab scanning, plugged – testing, plugged the ability to scan bills of lading into that existing technology. And so our reliance on the white paper was perfectly reasonable, as this court has determined, perfectly reasonable at the time that we filed the complaint to assert that there was direct infringement taking place. And I would submit that it's a difficult suggestion indeed that some – that a party was grossly negligent in its pre-suit investigation by filing a complaint that satisfied all of the pleading obligations that it had of asserting direct infringement. That's the situation we have here. And I think in this situation, that means that R&L's pre-suit investigation was not, in fact, grossly negligent, unless there are further questions from the court. Any more questions? All right, great. Thank you, Ron. Thank you, Mr. White and Ms. Jankowski. The case is taken under submission. And if you could provide the documentation we asked for by, let's say, next Thursday, is that enough time to dig through the records? We'll dig through the records and see if we can find that. Okay. Thank you.